**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5526

CARLTON MILTON PHILLIPS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5527

WILLIE WALLS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 97-4256

DONALD EUGENE SMITH,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-93-17-V)

Submitted: April 7, 1998

Decided: May 7, 1998

Before ERVIN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard A. Phillips, BENBOW & PHILLIPS, Statesville, North Carolina; David A. Minor, MINOR & BROWN, Statesville, North Carolina; Harold J. Bender, Charlotte, North Carolina, for Appellants. Mark T. Calloway, United States Attorney, H. Thomas Church, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendants Carlton Milton Phillips, Willie Walls, and Donald Eugene Smith were convicted by jury of conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 (1994). The district court sentenced Phillips to 188 months' imprisonment, Walls to 262 months' imprisonment, and Smith to 324 months' imprisonment. On appeal, the Defendants raise several issues challenging their convictions and sentences. Finding no error, we affirm.

I

The Defendants first argue that the district court erred by allowing the Government to improperly bolster its case through the testimony of Special Agent David Ramsey. Agent Ramsey received assistance during the investigation from Michael Armstrong. Armstrong conspired with the Defendants and was involved in multiple drug transactions with them. During the direct examination of Agent Ramsey, the prosecutor asked him why a number of individuals with whom Michael Armstrong had been involved had not been indicted. Agent

2

Ramsey replied that suspects are generally not indicted unless their involvement is corroborated. Ramsey then went on to elaborate regarding the type of investigative methods used to gather corroborative evidence. The defense objected to the line of questioning, and the district court overruled the objection.

It is error for the government to vouch for the credibility of its witnesses, either through the prosecutor or through a government witness who testifies as to the trustworthiness of other witnesses. See United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993) (citations omitted). It is not improper bolstering for the Government to explain its investigative procedures or its relationship with the witnesses. See id. In the instant case, there was no bolstering or vouching. The Government neither gave personal assurances that its witnesses were trustworthy nor stated that information not presented to the jury supported the witnesses' testimony. The Government merely elicited testimony from Agent Ramsey as to the methods of corroboration of information leading to an indictment. Thus, the district court did not err in allowing the testimony.

II

Defendant Smith next alleges that the district court erred by refusing to instruct the jury that possession of cocaine base was a lesser included offense of the conspiracy to possess cocaine base with the intent to distribute charge. Smith argues that he was entitled to the lesser included offense instruction because both the Government and his defense counsel put on evidence to show that Smith was an abuser of cocaine base. While there was evidence that Smith used drugs, the Government also put on substantial evidence demonstrating that Smith also sold cocaine and paid others to sell it for him. Regardless, Smith was not entitled to an instruction on the lesser included offense of simple possession of cocaine base.

A criminal offense includes a lesser offense where "the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck v. United States, 489 U.S. 705, 716 (1989). Because possession is not a necessary element of the conspiracy charge, Smith was not entitled to an instruction on simple possession. See 21 U.S.C. § 846 (1994); United States v. Horn, 946 F.2d 738, 744

3

(10th Cir. 1991) ("possession, possession with intent to distribute, and distribution are not lesser included offenses of conspiracy to commit these same offenses"); United States v. Swingler, 758 F.2d 477, 499 (10th Cir. 1983); United States v. Brown, 604 F.2d 557, 560-61 (8th Cir. 1979). The cases that Smith relies upon, United States v. Thornton, 746 F.2d 39, 48 (D.C. Cir. 1984), and United States v. Levy, 703 F.2d 791, 793 (4th Cir. 1983), are distinguishable from Smith's situation because in those cases the defendant was charged with possession with intent to distribute and not conspiracy.

III

Defendant Phillips argues that the district court erred when it admitted statements made by him to Special Agent Ramsey. Phillips' counsel filed a motion three days before trial to suppress the statements made by Phillips to Ramsey. The district court denied the motion as untimely.

Motions to suppress evidence must be raised prior to trial. See Fed. R. Crim. P. 12(b)(3). The district court may set a time for the making of such pre-trial motions, and a party's failure to raise defenses or objections pursuant to Rule 12(b) constitutes waiver of the issue. See Fed. R. Crim. P. 12(f). In this case the arraignment order, dated January 4, 1994, directed that all pre-trial motions had to be filed within fifteen days after the date of the arraignment order, or the date on which counsel is appointed or makes a general appearance, whichever is later. Counsel for Defendant Phillips was appointed on January 7, 1994. Counsel filed the motion to suppress the statements made by Phillips to Agent Ramsey on June 9, 1995, three days before trial began. The motion did not state any reason for non-compliance with the deadline set out by the court, nor did it identify any prejudice arising from a waiver. Therefore, relief under Rule 12(f) was not available. See Fed. R. Crim. P. 12(f). Phillips does not address the timeliness issue in his brief on appeal and argues only the merits of the suppression motion. Because Phillips did not demonstrate cause for non-compliance with district court's order setting the deadline to file a suppression motion, we find that the district court did not abuse its discretion in denying the motion.

IV

The Defendants argue that in three instances the Government failed to disclose evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), and their due process rights. First they argue that the Government failed to disclose notes from a September 25, 1992, interview between Investigator Craven of the North Carolina State Bureau of Investigation and Elliot Phifer, a co-conspirator of the Defendants, until the Government discovered the notes during trial and showed them to defense counsel. Next the Defendants allege that the Government failed to disclose information regarding four interviews between Agent Ramsey and Michael Armstrong that occurred on July 13, 14, 15, 1992, and December 9, 1992. Finally, the Defendants allege that the Government violated their rights by losing a tape recorded conversation between Phillips and Armstrong.

The Defendants did not object at trial to the testimony of Phifer or Ramsey regarding the interviews. Therefore, their challenge to the admission of this testimony is reviewed for plain error. <u>See</u> Fed. R. Crim. P. 52; <u>United States v. Olano</u>, 507 U.S. 725, 732-34 (1993). First, the record reflects that the information regarding the September 1992 interview between Craven and Phifer was in the Government's open file, a file which was available for the Defendants' review and access. The material the prosecutor first produced at trial was rough notes regarding the interview.* The full report of the interview was in the file.

The transcript reflects that a summary of the Armstrong interviews was also in the open file. Again, only Agent Ramsey's rough notes of each interview were not in the file. The prosecutor clarified which notes Agent Ramsey had and offered them to defense counsel. Defense counsel said that he was satisfied with the material he had and was able to cross-examine the witness.

_____

*During the trial the prosecutor first said that he had not disclosed the notes to defense counsel because he thought they were the rough notes, but they were not, they were the full interview report. (JA 144-45). Later, the prosecutor again examined the document and decided that they were indeed the rough notes as he originally thought. (JA 147).

5

The Defendants allege that if they had been made aware of the rough notes earlier they might have been able to"hone" their cross-examination because they allege the statements were vague and contradictory. However, the open file contained all of the final reports of the interviews to which the Defendants were entitled. Accordingly, we find that there was not a violation of the Defendants' rights under Brady or the Due Process Clause. Cf. United States v. Hinton, 719 F.2d 711, 721-22 (4th Cir. 1983) (holding that an agent's rough notes of an interview need not be produced under the Jencks Act, 18 U.S.C. § 3500 (1994)).

Finally, the Defendants allege that the failure to preserve and produce the tape recording between Phillips and Armstrong at the Nash County Courthouse on February 26, 1992, violated the Due Process Clause. Agent Ramsey testified that the recording had been lost. The Defendants allege that on the tape recording during his conversation with Armstrong, Phillips denied that he sold crack.

The failure to preserve potentially useful evidence is only a denial of due process if the defendant shows bad faith on the part of the police. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988). A defendant's due process rights are not violated when evidence is inadvertently lost. See United States v. Sanders, 954 F.2d 227, 231 (4th Cir. 1992). The Defendants allege that because the Government was able to locate a tape recording between Armstrong and Phillips that implicated Phillips, yet could not find the recording that allegedly exculpated Phillips, the loss involved more than inadvertence or negligence, and the failure to preserve evidence of this type necessarily amounts to bad faith.

The Defendants, however, do not demonstrate anything more than inadvertence. In addition, the Defendants do not demonstrate that even assuming the tape recording existed, in light of the overwhelming evidence of their guilt, a reasonable probability existed that the tape recording would have changed the result of the trial. See United States v. Bagley, 473 U.S. 667, 682-83 (1985). We therefore find that this claim is without merit.

V

All three Defendants allege that the district court erred in its finding of the amount of cocaine base reasonably foreseeable to them. In

6

a drug offense, the defendant is accountable for all quantities of contraband with which he was directly involved, and in the case of a jointly undertaken criminal activity, all quantities of contraband foreseeable to him within the scope of the criminal activity in which he jointly participated. See U.S. Sentencing Guidelines Manual, § 1B1.3, comment. (n.2) (1997); United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir. 1993). Proof of the quantity of cocaine reasonably foreseeable to the defendant must be established by a preponderance of the evidence. See United States v. McManus, 23 F.3d 878, 885 (4th Cir. 1994). This court reviews the district court's foreseeability finding under the clearly erroneous standard. See United States v. Banks, 10 F.3d 1044, 1058 (4th Cir. 1993).

The defense's attack on the amount of cocaine base reasonably foreseeable to Smith, Walls, and Phillips is based on its contention that the Government was "something less than honest[ ]" in attributing the amount of cocaine reasonably foreseeable to co-conspirator Michael Armstrong, because most of the cocaine in the conspiracy came from Armstrong. The Defendants contend that because their cocaine came from Armstrong, the court should not have attributed more drugs to them than it attributed to Armstrong. However, Armstrong was given immunity for some of his conduct in exchange for cooperating in the investigation. Moreover, disparity of sentencing between co-conspirators is generally not an issue that may be raised on appeal. See United States v. Goff, 907 F.2d 1441, 1447 (4th Cir. 1990) (collecting cases).

The Defendants also collectively argue that the district court erred because it allegedly failed to make specific findings of fact with respect to the amount attributable to each Defendant. The transcript of the sentencing hearing reflects that the district court did make specific findings of fact with respect to each Defendant and that these findings were supported by a preponderance of the evidence.

Smith argues that the amount attributed to him should be decreased by the amount of drugs he obtained for his personal use. He relies upon a Ninth Circuit case, United States v. Kipp, 10 F.3d 1463, 1465 (9th Cir. 1993), which states that drugs for personal use are not relevant to the crime of possession with intent to distribute because they constitute a separate course of conduct not related to distribution.

7

Smith was convicted of conspiracy to possess with intent to distribute. Even if Kipp were binding authority in this circuit, which it is not, the differences in the offenses of conviction render this case distinguishable from Kipp.

Further, the district court's findings regarding the amount of drugs attributed to Smith as a part of the conspiracy was fully supported by the evidence. Armstrong testified that in the summer of 1991 he began to receive money from Smith to bring cocaine base to Mooresville, North Carolina, from Philadelphia. Armstrong testified that each time he would return with four to four and one half ounces of cocaine base, he would sell three to three and one half ounces for Smith, and that Smith would sell the remaining crack himself. Armstrong testified that this occurred on a weekly basis until December 1991. Government witnesses Elliot Phifer, Kathy Walker, and Harold Gabriel corroborated Armstrong's testimony and testified that each of them had sold crack for Smith during the conspiracy. Based upon this testimony, the district court did not clearly err in attributing to Smith between 500 grams and 1.5 kilograms of cocaine base.

Walls contends that the district court erred in calculating the amount of cocaine base reasonably foreseeable to him because he should have been found less culpable than Armstrong, and because the district court did not state its factual findings. As discussed above, we find that the district court did not clearly err in calculating the amount of cocaine base reasonably foreseeable to Walls.

Finally, Phillips argues that the district court erred in calculating the amount of cocaine base reasonably foreseeable to him because, in addition to the two general arguments of the Defendants, the amount attributed to him was established only by the testimony of Armstrong. Phillips alleges that Armstrong's testimony was inconsistent and was not credible, so Armstrong's testimony should not be used in calculating the amount. The jury found Armstrong's testimony credible. He testified that in October 1991 he began receiving cocaine base from his uncle, Defendant Phillips. Armstrong testified that between October and December 1991 he made approximately twelve trips to his uncle and picked up four to four and one half ounces of cocaine base each time. Elliot Phifer corroborated Armstrong's testimony and stated that he made eight trips with Smith to pick up Armstrong at

8

Phillips' house. He further testified that on at least two of these occasions he observed eight to ten ounces of cocaine base in his possession. Agent Ramsey testified that Phillips admitted to him that he had done one two-ounce deal with Armstrong. Based upon this evidence, we find that the district court did not clearly err in calculating the amount of cocaine base reasonably foreseeable to Phillips.

VI

Finally, Smith argues that he should not have received an enhancement for being an organizer or leader in the conspiracy under USSG § 3B1.1(c). The determination that a defendant is an organizer or leader in an offense is essentially a factual question reviewable for clear error. See United States v. Harriott, 976 F.2d 198, 202 (4th Cir. 1992).

Elliot Phifer, Kathy Walker, Harold Gabriel, and Michael Armstrong all testified that they were selling cocaine for Smith during the conspiracy. Phifer and Armstrong both testified that Smith furnished the money to purchase the cocaine. Considering this evidence, the district court properly concluded that Smith was an organizer or leader, so the enhancement was proper. Smith also argues that because Armstrong did not receive an enhancement as an organizer or leader, Smith should not have received an enhancement either. As discussed above, this argument is without merit.

Because all of the Defendants' claims are meritless, we affirm their convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9